UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW POTTER,

     Plaintiff,

                                  Case No. 1:24-cv-714

v.

                                  Hon. Paul L. Maloney

CITY OF HARBOR SPRINGS, *et al.,*

     Defendants.

_____/

## OPINION

Plaintiff Andrew Potter brings this action against the City of Harbor Springs (the "City"), his former employer; Matt Bugera, the City's mayor; Victor Sinadinoski, the City's manager; James Ramer, the City's attorney; and Michael Bogren, former special assistant city attorney to the City, under the Veterans Preference in Employment Act ("VPA"), the Michigan Constitution, Michigan public policy, and 42 U.S.C. § 1983. (Am. Compl. ECF No. 9.) Potter also brings a wrongful employment retaliation, threats, discrimination, or termination in violation of the Whistleblowers' Protection Act ("WPA") against the City, Sinadinoski, and Bugera. This matter is before the Court on the City, Bugera, and Sinadinoski's motion to dismiss (ECF No. 11) and Ramer and Bogren's motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 12). For the reasons stated below, the Court grants in part and denies in the part Defendants' motions to dismiss.

## I. BACKGROUND

Potter is an honorably discharged veteran of the United States Air Force. (Am. Compl. ¶ 1.) He was hired by the City in 2018 as assistant to the city manager. (*Id.* ¶ 39.) As assistant to the city manager, Potter's "duties included attending and recording City Council, board, commission, and assigned committee meetings, taking notes and transcribing meeting minutes for approval; assisting

with the organization and preparation of meetings; and assisting the City Manager with clerical tasks as assigned." (*Id.* ¶ 50.) Potter worked this role from 2018 until his termination on April 1, 2021. (*Id.* ¶ 39.) The city manager from 2019 to 2021 was Sinadinoski. (*See id.* ¶¶ 63-69.)

On March 31, 2021, Sinadinoski asked Potter to investigate whether the City could relocate the City's Chamber of Commerce to a building at Josephine Ford Park (the "Park"). (*Id.* ¶¶ 63-65.) While "participating in that inquiry/investigation," Potter reached out to the Michigan Department of Natural Resources ("DNR") Grants Management and Finance/Operations Division Coordinator Merrie Carlock. (*Id.* ¶ 64.) He emailed her that the City was "misusing," "misappropriating" and converting the Park for "inappropriate private commercial benefit." (*Id.*) He explained that the City had permitted "Walstrom Dock & Dredge to use city parkland (Josephine Ford Park) for its spring and fall principal port of operations" and the City currently desires to move its Chamber of Commerce to the Park. (*Id.*) The Michigan DNR followed up to Potter's "report[]." (*Id.* ¶ 66.) It "requested additional information on the matters." (*Id.*)

That same day, Potter told Sinadinoski "he had 'bad news' for him" and forwarded Sinadinoski the email chain between him and the Michigan DNR. (*Id.* ¶ 67.) Sinadinoski allegedly "became upset and withdrew into his office for the rest of the day." (*Id.* ¶ 70.)

"The next day, on April 1, 2021, Defendant Sinadinoski ordered Potter into an unscheduled meeting 'behind closed doors' in Sinadinoski's office." (*Id.* ¶ 71.) Potter alleges that Sinadinoski was still "upset" and "angry" about yesterday. (*Id.* ¶ 72.) During the meeting, Potter alleges that Sinadinoski "exploded in a fit of rage and pounded the desk" during the meeting. (*Id.* ¶ 74.) Potter claims he told Sinadinoski he was going to file a formal complaint regarding the meeting. (*Id.* ¶ 75.) Sinadinoski also informed Potter that "he was terminating Potter's employment" during this meeting. (*Id.*)

Potter claims that the termination was retaliatory and in violation of Michigan's VPA. (*Id.* ¶¶ 75-81.) Potter notified Defendants from April 1, 2021, to April 30, 2021, that he protested the unlawful termination, and Defendants violated the VPA by not providing him with written notice and a pre-termination hearing. (*Id.* ¶ 85.) Thus, he "requested a fair hearing under the VPA." (*Id.*)

On May 11, 2021, Mayor Bugera wrote Potter a letter that affirmed Potter's request for a hearing under the VPA. (*See id.* ¶¶ 87-90.) Mayor Bugera appointed Bogren "as a special attorney to serve as [the] VPA hearing officer." (*Id.* ¶ 97.) Defendants scheduled the hearing for May 28, 2021, via Zoom. (*Id.* ¶ 119.)

That day, Potter joined the hearing via Zoom. (*Id.*) Potter alleges that the hearing was a "sham," "orchestrated by Defendants." (*Id.*) He claims that Defendants improperly appointed Bogren to serve as the hearing officer since he did not take an oath and was not considered a part of the City's legal department. (*Id.* ¶¶ 102-04.) Potter also alleges that Bogren did not act as a "neutral factfinder, decisionmaker, or hearing officer." (*Id.* ¶ 105.) Bogren allegedly did not allow Potter to "be present" and "defend" himself by "not permitting Potter fair and appropriate representation by counsel," "refusing to allow cross-examination and questioning by Potter's counsel," allowing Sinadinoski to testify over telephone, and engaging in *ex parte* communications with Defendants regarding legal research, advocacy, and "to defeat all of Potter's claims." (*Id.* ¶¶ 107-09, 204.)

Potter then sued Defendants, starting in state court. On June 29, 2021, Potter filed a complaint against the City, Sinadinoski and Bugera in Emmet County Circuit Court (No. 21-107342-CD). (Pl.'s Joint Opp'n Br. to Mots. to Dismiss, ECF No. 16, PageID.507.) His state action raised claims for breach of the VPA and WPA and sought declaratory relief and money damages. (*Id.*) Potter then initiated a near-identical suit with the same court and judge on March 29, 2024 (Case No. 24-108335-CD). (*Id.*) The March 2024 suit had the same claims as the 2021 action, but added

Bogren and Ramer as defendants and raised more claims for Defendants' alleged breach of Potter's rights under the state and federal constitutions and Michigan public policy.  (*Id.*)

Defendants removed the March 2024 action to this Court under this Court's federal question jurisdiction.  (ECF No. 1.)  Bogren and Ramer moved to dismiss Potter's complaint under Rule 12(b)(6) for failure to state a claim.  (ECF No. 5.)  The City, Sinadinoski, and Mayor Bugera did the same.  (ECF No. 6.)  This Court then issued an order allowing Potter to cure the alleged deficiencies. (07/22/24 Order, ECF No. 8.)  Potter filed his first amended complaint on August 9, 2024.  (ECF No. 9.)  The City, Sinadinoski, and Mayor Bugera moved to dismiss Potter's amended complaint under Rule 12(b)(6) for failure to state a claim.  (ECF No. 11.)  Bogren and Ramer did the same. (ECF No. 12.)  Potter filed a combined response to Defendants' motions to dismiss (ECF No. 16.)

## II.  LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss a complaint for failure to state a claim.  To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

Courts are generally bound to consider only the complaint when resolving a motion to dismiss.[1]  *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  When

---

[1] Generally, assessment of the facial sufficiency of the complaint must be undertaken without resort to matters outside the pleadings.  *Wysocki*, 607 F.3d 1102, 1104 (6th Cir. 2010).  Yet "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."  *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508

considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).  The Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or "formulaic recitations of the elements of a cause of action," *Twombly*, 550 U.S. at 555.

## III. ANALYSIS

Potter asserts four state-law and four federal-law claims.  Under Michigan law, Potter alleges wrongful termination in violation of Michigan's VPA, wrongful discharge and retaliation in violation of Michigan public policy, violation of the Michigan Constitution's fair treatment clause, and wrongful employment retaliation in violation of Michigan's WPA.[2]  Under federal law, he alleges First Amendment retaliation, a procedural due process violation, a substantive due process violation, and an unlawful civil conspiracy.  Defendants moved to dismiss each claim.  The Court will take each claim in turn, starting with the federal claims.

### A. Civil Conspiracy

Potter alleges that Defendants conspired to deprive him of his rights under the VPA, the WPA, Michigan Public Policy, and the First and Fourteenth Amendments.  "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).  To allege a plausible civil conspiracy claim, Potter must allege enough facts to support a reasonable inference (1) "that there was a single plan," (2) "that the alleged coconspirator shared in the general conspiratorial objective," and (3) "that an overt act was

---

F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010).

[2] Potter's amended complaint, however, specifies that the WPA claim is directed towards just the City, Sinadinoski, and Mayor Bugera.  (Am. Compl., PageID.262.)

committed in furtherance of the conspiracy that caused injury to the complainant." *Id.* at 944 (citations omitted).

Here, Potter fails to allege any facts to support his unlawful conspiracy claim. Potter's complaint contains zero facts that support a reasonable inference that there was a single plan, that Defendants shared a general conspiratorial objective, and that they committed an overt act in furtherance of the conspiracy. At most, Potter alleges that Defendants have conspired "to 'circle the wagons'" and "to . . . willfully deprive Potter of his rights." (Am. Compl. ¶¶ 30, 34.) These allegations are conclusory and provide the Court with no factual context to survive a motion to dismiss. *See Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (finding that a court is not required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations."). Rule 8 imposes factual demands on complaints, requiring plaintiffs to provide more than unadorned accusations. *Iqbal*, 556 U.S. at 678. Potter has not met that low bar for his civil conspiracy claim. Thus, the Court will dismiss Potter's civil conspiracy claim for failure to state a claim.

And even if Potter alleges some non-conclusory allegations, the intracorporate conspiracy doctrine negates any alleged conspiracy. That doctrine is based on a straightforward concept: a conspiracy requires an agreement between two people, but "if all defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019). Potter alleges that Defendants were employed by the City at the time they conspired against him. (*See* Am. Compl. ¶¶ 13, 34, 36, 45.) Potter's civil conspiracy claim fails to state a claim on which relief can be granted under the intracorporate conspiracy doctrine.

## B. First Amendment Retaliation

Potter lodges two First Amendment retaliation claims against Defendants.  Potter's first retaliation claim stems from Sinadinoski terminating him for notifying the Michigan DNR of the City's use regarding the Park.  (*Id.* ¶ 265.)  Potter's second retaliation claim alleges that Defendants retaliated against him for exercising "his right to Petition his government for redress of grievance." (*Id.* ¶ 275.)

To plead a plausible First Amendment retaliation claim, Potter must allege that he was retaliated for engaging in constitutionally protected conduct.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006); *see Evans-Marshall v. Bd. of Educ.*, 624 F.3d 332, 337-38 (6th Cir. 2010).  Defendants argue that both of Potter's alleged instances of conduct are not constitutionally protected.  Thus, he fails to allege a plausible First Amendment retaliation claim.

### 1. Free Speech Retaliation

To show that his speech was protected, Potter—a public employee—must satisfy "a three-part test."[3]  *Barton v. Neeley*, 114 F.4th 581, 588 (6th Cir. 2024) (citing *Handy-Clay v. City of Memphis*, 695 F.3d 531, 540 (6th Cir. 2012)).  "First, the employee must speak as a private citizen and not as an employee pursuant to his official duties."  *Evans-Marshall*, 624 F.3d at 338 (citing *Connick*, 461 U.S. at 143).  Second, the employee must speak on "matters of public concern."  *Id.* at 337 (citing *Garcetti*, 547 U.S. at 421).  Third, the employee must show that his speech interest outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  *Id.* (quoting *Pickering*, 391 U.S. at 568).  Potter "must satisfy *each* of these requirements."  *Id.* at 338.

---

[3] "[W]hether . . . a public employee's speech is protected [i]s one of *law*, not one of both fact and law."  *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 350 (6th Cir. 2010) (emphasis added); *Mayhew v. Town of Smyrna*, 856 F.3d 456, 464 (6th Cir. 2017) ("[T]he district court did not err by concluding that the determination as to whether [Plaintiff] engaged in protected speech was one of law.").

(a) Speech Made Pursuant to Official Duties

Statements made by public employees generally fall into one of three buckets.  The first bucket being statements made under an employee's "'official duties,'" "rather than in their capacities as private citizens." *Barton*, 114 F.4th at 588 (quoting *Garcetti*, 547 U.S. at 421).  Statements that fall in this bucket "are not protected by the First Amendment and therefore subject to 'employer discipline.'"  *Id.* (quoting *Garcetti*, 547 U.S. at 421).  The second bucket consists of "statements that relate simply "'to public employment or concerns information learned in the course of public employment.'"  *Id.* (quoting *Lane*, 573 U.S. at 239).  Second bucket statements "may be protected" under the First Amendment.  *Id.*  The third bucket is comprised of statements that were "not the product of . . . tasks the employee was paid to perform," these statements are generally protected. *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009); *see DeCrane v. Eckart*, 12 F.4th 586, 595 (6th Cir. 2021) (finding that when public employees speak as *private citizens* on issues of *public concern*, employers may discipline for the speech only if they satisfy *Pickering* balancing).

What bucket a public employee's speech falls into is a "practical" question.  *Fox*, 605 F.3d at 350.  This practical inquiry looks to the "content and context" of the statement, considering the speech's "impetus," "setting," "audience," and "general subject matter."  *Id.* at 348; *Mayhew*, 856 F.3d at 464.  Courts also consider whether the speech was made under an "ad hoc" duty; as the Sixth Circuit has "repeatedly recognized" that even ad hoc or de facto duties can fall within the scope of an employee's official responsibilities.  *Davidson v. Arlington Cnty. Sch. Bd. of Educ.*, 847 F. App'x 304, 309 (6th Cir. 2021) (citations omitted).

Consider *Weisbarth v. Geauga Park District*; there, the Sixth Circuit found that a park ranger spoke under her "official duties" when she answered a paid consultant's questions about her employer's management (Geauga Park District).  499 F.3d 538, 544 (6th Cir. 2007).  The park ranger's evaluation of the Park District was negative.  *Id.* At 540.  The Park District allegedly

8

terminated her for the negative review.  *Id.* at 540-41.  As a result, the park ranger brought a First Amendment retaliation claim against the Park District.  *Id.*

One issue the court wrestled with was whether the park ranger's negative evaluation was made under her official duties.  *Id.* at 542-43.  The Sixth Circuit held that it was.  *Id.* at 546.  It explained that while responding to the evaluation was not in the job description of a park ranger, her discussion with the paid consultant occurred as part of "carrying out" her professional responsibilities, an ad hoc duty.[1]  *Id.* at 544.  Because the ranger voiced her concerns "when explicitly asked to do so."  *Id.* at 545.  The court found the explicit request made the termination "more constitutionally defensible . . . albeit also more difficult to understand."  *Id.* at 545.  Last, the court explained that even though she voiced her evaluation to a third party, that alone was not conclusive.  *Id.*  "[T]he determinative fact . . . [is] not where the person to whom the employee communicated fit within the employer's chain of command, but rather whether the employee communicated pursuant to his or her official duties."  *Id.*  The Sixth Circuit, therefore, held that the trial court properly dismissed the retaliation claim.  *Id.* at 546.

### (b) Report to the Michigan DNR

With this in mind, the Court must resolve whether Potter submitted his report to the Michigan DNR pursuant to his official duties.  If so, the speech enjoys zero First Amendment protection.

---

[1] The *Weisbarth* opinion also relied on the Sixth Circuit's holding and reasoning in *Haynes v. City of Circleville*, 474 F.3d 357 (6th Cir. 2007).  *Weisbarth*, 499 F.3d at 544.  In *Haynes*, the plaintiff was an officer authorized to be a canine handler for a police force.  474 F.3d at 359.  The force's administrators cut dog-training hours to save money.  *Id.* at 359-60.  The plaintiff, upset, wrote a memo expressing his concern that reduced canine training would render police dogs less effective and potentially endanger the public.  *Id.* at 360.  The plaintiff was fired because of the memo and other protests.  *Id.* at 360-61.  The Sixth Circuit held that the plaintiff's complaints about the recent policy occurred as part of "carrying out his professional responsibilities" of training dogs and therefore were made "pursuant to his official duties."  *Id.* at 364.  Thus, the Sixth Circuit reversed the trial court's decision in finding that the plaintiff set forth a prima facie First Amendment retaliation claim.  *Id.* at 365.

Potter alleges that he "was asked to participate in an investigation/inquiry by Sinadinoski." (Am. Compl. ¶¶ 64-67.)  The inquiry was whether the Park "could lawfully be used in the future for a Chamber of Commerce building location."  (*Id.*)  "While participating in that inquiry/investigation, Plaintiff Potter . . . [emailed the] Michigan Department of Natural Resources [] Grants Management and Finance/Operations Division Coordinator Merrie Carlock, violations or suspected violations of law."  (*Id.* ¶ 64.)   Specifically, he alleges that in his email to Carlock, he reported misuse, misappropriation, and conversion of the Park:

> Potter . . . reported . . . Defendants' misuse, misappropriate [sic] and/or conversion of public parkland (Josephine Ford Park) for inappropriate private commercial benefit, including the Defendants' decisions to permit Walstrom Dock & Dredge to use [Josephine Ford Park] for its spring and fall principal port of operations as well as the Harbor Springs Area Chamber of Commerce's desired move to occupy city parkland/vacant building.

(*Id.*)  Potter "believed Walstrom's use of the public parkland was an improper use of City parkland due to the parking being previously purchased, developed, and maintained via public monies."  (*Id.* ¶ 65.)

The Michigan DNR emailed Potter back about the "report."  (*See id.* ¶¶ 66-67.)  The Michigan DNR "requested additional information on the matters from Plaintiff Potter."  (*Id.* ¶ 66.)  Potter "reported" back to Sinadinoski "by forwarding his email chain with the State of Michigan Department of Natural Resources."  (*Id.* ¶ 67.)  He alleges that he told Sinadinoski that this was "bad news for him."  (*Id.*)

Potter was employed as a "staff level" "Administrative Assistant to the City Manager of Harbor Springs."  (*Id.* ¶¶ 49, 52.)  The city manager was Sinadinoski.  (*Id.*)  Potter's "job duties included attending and recording City Council, board, commission, and assigned committee meetings, taking notes and transcribing meeting minutes for approval; assisting with the organization

and preparation of meetings; and assisting the City Manager with clerical tasks as assigned." (*Id.* ¶ 50.)

Potter's customary job duties did not require him to communicate with the Michigan DNR. (*See id.*)  But Sinadinoski asked him to "investigate" whether the City could place the Chamber of Commerce building at the Park.  (*See id.* ¶¶ 64-67.)  This non-customary job duty is similar to the park ranger's ad hoc duty in *Weisbarth*, who was tasked with answering a third-party consultant's evaluation.  Like her, Potter was delegated with determining whether the Park could serve as the location for the City of Harbor Springs's Chamber of Commerce.  (*See id.*)  And the fact that Potter had concerns over this endeavor doesn't mean he spoke as a private citizen.  The report still owed its existence to the task Sinadinoski delegated to him, like the canine officer in *Haynes* whose critical memo arose from his employment as an officer.

Looking at this practically, Potter was an assistant to Sinadinoski, and Sinadinoski asked Potter to figure out whether the City could move its Chamber of Commerce to the Park.  (Am. Compl. ¶ 64.)  In resolving such, Potter emailed the Michigan DNR, who gave him "bad news." (*Id.* ¶ 67.)  So even if Potter was trying to look out for the public interest, he was still an assistant to the city manager inquiring about an issue regarding the City within the scope of his employment.  *See, e.g., Kline v. Portage Cnty. Bd. of Comm'rs*, 5 F. Supp.3d 902, 915 (N.D. Ohio 2014).

* * *

Because this Court finds that Potter's speech was made in connection with his job duties, and not that of a private citizen, it need not perform the *Pickering* balance test or determine whether it touched on a matter of public concern.  *See Housey v. Macomb Cnty.*, 534 F. App'x 316, 322-23 (6th Cir. 2013) (finding that speaking as an employee rather than a citizen will "doom" a First Amendment retaliation claim regardless if the speech was a matter of public concern).  The Court will dismiss Potter's First Amendment retaliation claim on his report to the Michigan DNR.

11

## 2. Right to Petition Retaliation

Potter's other First Amendment retaliation claim stems from his right to petition the government for redress of grievance.  The First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I.  In any event, it "does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 478 (6th Cir. 1999).  Here, Potter alleges mere conclusory allegations regarding his right to petition.  At most, he alleges that Defendants denied his right "to be free from retaliation as a result of his exercise of his right to Petition his government for [redress] of grievance." (Am. Compl. ¶ 86.)  This allegation falls far short of a plausible retaliation claim.  So the Court will dismiss Potter's First Amendment retaliation claim concerning his right to petition.

## C. Procedural Due Process

Potter asserts two procedural due process claims against Defendants.  First, he alleges that Defendants violated his right to procedural due process under the Fourteenth Amendment when they terminated him without a pre-deprivation hearing and written notice.  (*Id.* ¶ 277.)  Second, he alleges that Defendants violated his right to due process when they hired Bogren as the hearing officer for his post-deprivation hearing, which resulted in a "sham" hearing.  (*Id.* ¶ 9.)

To state a procedural due process claim, Potter must identify a protected liberty or property interest of which he was deprived.[5]  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570-71

---

[5] A property interest in continued employment is "not created by the Constitution." *Roth*, 408 U.S. at 577.  When a property interest exists, it is "created and . . . defined by existing rules or understandings that stem from an independent source such as state law." *Id.*  Here, Potter asserts that the Michigan VPA provided him with a property interest in his employment with the City of Harbor Springs. *See* Mich. Comp. Laws § 35.402; *see also Jackson v. Detroit Police Chief*, 506 N.W.2d 251, 253 (Mich. 1993).

(1972).  Only then will the Court "examine[] whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993).

### 1. Pre-deprivation Hearing

Potter alleges that the VPA provided him with a protected property interest.  Therefore, under the VPA, Defendants were required to provide him with a pre-termination hearing and written notice of allegations of misconduct.  The VPA provides that a veteran is entitled to a pre-deprivation hearing and written notice stating the cause or causes of termination.  Mich. Comp. Laws § 35.402. The statute "takes veterans out of an at-will employment regime and provides them with a property interest in their continued employment, which can be altered only by a pretermination hearing and a finding of 'just cause' as specified by statute."  *Young v. Twp. of Green Oak*, 471 F.3d 674, 684 (6th Cir. 2006) (citing Mich. Comp. Laws § 35.402).  Potter, therefore, had a property interest in his employment and was owed a pre-termination hearing and written notice of misconduct.

Potter alleges a plausible procedural due process violation.  He alleges he's a veteran; he was never provided with written notice stating the cause of his termination, and he never received a pre-deprivation hearing.  (Am. Compl. ¶¶ 43, 79.)  The Court will deny Defendants' motion to dismiss Potter's procedural due process claim.

Defendants contend, however, that there is no due process violation because they provided Potter adequate post-deprivation remedies.  But only in limited circumstances may a court dismiss a procedural due process claim "if the state provides an adequate post deprivation remedy and (1) the deprivation was unpredictable or 'random'; (2) pre[-]deprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty."  *Johnson v. City of Saginaw*, 980 F.3d 497, 508 (6th Cir. 2020).  Here, Potter alleges that the deprivation of his property interest was not random; instead, "Sinadinoski became upset and withdrew into his office for the rest of the day on March 31, 2021, in part to plot his

13

retaliation against Plaintiff Potter." (Am. Compl. ¶ 70.) Moreover, providing Potter a pre-termination hearing was not impossible or impracticable. As a result, the post-deprivation hearing does not remedy the lack of a pre-termination hearing and written notice.

## 2. Post-deprivation Hearing

Under the VPA, Potter also had a right to a post-deprivation hearing.[6] *See Young*, 471 F.3d at 684; *Jackson*, 506 N.W.2d at 253. Defendants provided him with a post-deprivation hearing. Yet Potter alleges that his post-deprivation hearing was inadequate. (*See* Am. Compl. ¶ 109.) Potter makes numerous arguments on this front: (1) Defendants erred in allowing Bogren to serve as the hearing officer because he was not part of the City's legal department (*Id.* ¶ 104); (2) Bogren was biased against Potter and favored Defendants because he "engaged in regular *ex parte* communications with" Defendants "to try to defeat all of Potter's claims and potential claims," was "not appointed by City Council, and did not take an oath," and "performed legal research and advocacy" for Defendants (*Id.* ¶¶ 153, 165 204); (3) Potter was prohibited from cross-examining adverse witnesses (*Id.* ¶ 109); and (4) Potter was denied "the right to be 'present' and 'defend' himself with the assistance of counsel" (*Id.*).

The VPA provides that a veteran "shall not be removed . . . except after a full hearing before . . . the mayor of any city." Mich. Comp. Laws § 35.402. The mayor may, however, refer the hearing "to the legal department of such city." *Id.* "The legal department shall act as a fact finding body and shall have the power to examine witnesses, administer oaths and do all those things which the mayor could do hereunder. . . ." *Id.* "At such hearing the veteran shall have the right to be present and be represented by counsel and defend himself against such charges. . . ." *Id.* Assuming the mayor is

---

[6] Potter alleges that he served Defendants "with a written protest of his unlawful termination," and "additional notice of . . . Defendants' Violations of the VPA." (Compl. ¶ 85); *Jackson*, 506 N.W.2d at 253 ("Because plaintiff was demoted without a hearing, he was required to file a written protest with the mayor or he would be deemed to have waived the protections of the VPA.").

not present at the hearing, and after the hearing concludes, "the findings shall be transmitted to the mayor in writing. . . ." *Id.* After being provided with the transcript, "the mayor shall examine the transcript of the hearing [and] make a decision based on the transcript thereof." *Id.*

Potter sufficiently alleges that the post-deprivation hearing did not satisfy his right to due process. He alleges that he could not cross-examine Sinadinoski during the hearing and was denied the right to be present and defend himself with the assistance of counsel at the hearing. (*See* Am. Compl. ¶ 109.) And Potter alleges that Bogren was biased against Potter and favored Defendants because he "engaged in regular *ex parte* communications with" Defendants "to try to defeat all of Potter's claims and potential claims," was "not appointed by City Council, and did not take an oath," and "performed legal research and advocacy" for Defendants. (*Id.* ¶¶ 153, 165 204.) Taking these allegations together and viewing them in a light most favorable to Potter, Potter has alleged a plausible procedural due process violation under the Fourteenth Amendment.

### D. Substantive Due Process

Potter also asserts a substantive due process claim against Defendants. Substantive due process claims "often fall into one of two categories: (i) "claims that an individual has been deprived of a particular constitutional guarantee," and (ii) "claims that the government has acted in a way that shock[s] the conscience." *Handy-Clay*, 695 F.3d at 547. Potter seems to assert a claim under the first category. (*See* Am. Compl. ¶¶ 2, 9, 32, 86, 270.) Under this category, the constitutional guarantee alleged to be deprived of must be considered "fundamental." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Fundamental rights are rights that are "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.*

Potter alleges that Defendants infringed on his property interest in his public employment as an assistant to the city manager. This is insufficient to state a plausible substantive due process. *See*

*Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th Cir. 1992).  Because the right to "maintain public employment [is not] . . . a substantive due process right specifically protected under the Fourteenth Amendment."  *Houchens v. Beshear*, 850 F. App'x 340, 343-44 (6th Cir. 2021).  Additionally, an employee's right to be discharged for just cause does not implicate substantive due process protections.  *Hange v. City of Mansfield*, 257 F. App'x 887, 896 (6th Cir. 2007).  The Court will dismiss Potter's substantive due process claim.

### E. Qualified Immunity

Defendants argue that they are entitled to qualified immunity regarding Potter's federal constitutional claims.  "Qualified immunity spares officers from 'the time, expense and risk of money-damages actions' unless they violate clearly established constitutional rights."  *Moore v. Oakland Cnty.*, 126 F.4th 1163, 1167 (6th Cir. 2025) (quoting *Hogans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 508 (6th Cir. 2012)).  When multiple officers are involved, the Court must assess each officer's entitlement to qualified immunity separately.  *Smith v. City of Troy*, 874 F.3d 938, 944 (6th Cir. 2017) (per curiam).  To overcome the defense, the claimant must show that "(1) the officers violated a 'constitutional right' and (2) the right was 'clearly established.'"  *Moore*, 126 F.4th at 1167 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The Court may address the prongs in any order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### 1. Violation of Constitutional or Statutory Right

Potter asserts four violations of his constitutional and statutory rights against Defendants. Defendants are entitled to qualified immunity regarding the claims Potter has failed to state a claim on which relief can be granted: civil conspiracy, substantive due process violation, and First Amendment retaliation.  Potter alleges, however, plausible procedural due process violations relating to Defendants' failure to provide a pre-termination hearing and written notice and an adequate post-deprivation hearing under the VPA's statutory requirements.

16

Therefore, the Court must also focus on each official's entitlement to qualified immunity concerning Potter's procedural due process claims. "Simply put, to establish liability and to overcome a qualified immunity defense, [a claimant] must show that his or her *own* rights were violated, and that the violation was committed *personally* by the defendant." *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014); *see also Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004) ("The first question for the Court is whether [defendant], acting under the color of state law, committed a constitutional violation. A claimed constitutional violation must be based upon active unconstitutional behavior.").

Potter's first procedural due process claim focuses on the lack of a pre-termination hearing and written notice. Potter does not allege that Bogren or Ramer were involved in those failures. Thus, Bogren and Ramer are entitled to qualified immunity regarding Potter's first alleged procedural due process claim. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam).

Potter's second procedural due process claim regarding the inadequate post-deprivation hearing focuses on all Defendants. Potter alleges sufficient factual detail to set forth a plausible procedural due process violation against Defendants.

### 2. Clearly Established Constitutional Right

Turning to the second step. Defendants were on notice by 2021 that Potter had a property interest in his employment with the City of Harbor Springs. "The Michigan Legislature enacted the VPA 'for the purpose of discharging, in a measure, the debt of gratitude the public owes to veterans who have served in the armed services in time of war, by granting them a preference in original employment and retention thereof in public service.'" *Rudolph v. Lloyd*, 807 F. App'x 450, 454 (6th Cir. 2020) (quoting *Valentine v. Redford Twp. Supervisor*, 123 N.W.2d 227, 230 (Mich. 1963)). The Sixth Circuit also established in *Young v. Township of Green,* that "[t]he VPA takes

veterans out of an at-will employment regime and provides them with a property interest in their continued employment." 471 F.3d at 684. Michigan courts have said the same. *Sherrod v. City of Detroit*, 625 N.W.2d 437, 442 (Mich. 2001); *see also Vayda v. Cnty. of Lake*, 909 N.W.2d 874, 879 (Mich. Ct. App. 2017).

Sinadinoski and Bugera, thus, had fair notice that when they terminated Potter's employment on April 1, 2021, without written notice or a pre-termination hearing, they violated his procedural due process rights under the Fourteenth Amendment. All Defendants also had fair notice that when they conducted an inadequate post-deprivation hearing in violation of the VPA's explicit language, they violated Potter's procedural due process rights under the Fourteenth Amendment.

In sum, the Court will deny Sinadinoski and Mayor Bugera qualified immunity relating to the lack of a pre-deprivation hearing and written notice, grant Ramer and Bogren qualified immunity relating to the lack of a pre-deprivation hearing and written notice, and deny all Defendants qualified immunity relating to the inadequate post-deprivation hearing at this point in the proceedings.

### F. Michigan Constitution

Potter asserts a violation of the Michigan Constitution under its fair treatment clause. Defendants move to dismiss, arguing that the Michigan Constitution does not provide an implied money damages remedy against government officials or municipalities. That's correct—"there is no damages remedy available against individual government employees or municipalities for violations of the Michigan Constitution." *Hodges v. City of Grand Rapids*, No. 1:23-cv-1230, 2024 WL 3040882, at *12 (W.D. Mich. June 18, 2024), *aff'd in part, appeal dismissed in part sub nom. Hodges v. City of Grand Rapids*, 139 F.4th 495 (6th Cir. 2025) (citing *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 687 (6th Cir. 2018), *Jones v. Powell*, 612 N.W.2d 423, 426 (Mich. 2000)). Potter concedes this point. (Pl.'s Joint Opp'n Br. to Mots. to Dismiss, PageID.532.)

He argues, rather, that he is entitled to injunctive and declaratory relief for Defendants' state constitutional violations.  (*Id.*)  Still, he must show that the alleged harm affords him standing to seek injunctive and declaratory relief.  *See Simpson-Vlach v. Mich. Dep't of Educ.*, No. 22-1724, 2023 WL 3347497, at *4 (6th Cir. May 10, 2023) ("Importantly, plaintiffs must establish standing for each form of relief they seek, and the type of harm alleged impacts the available relief.").  Although Defendants did not raise the standing issue in their initial brief, the Court can address the issue *sua sponte* because the Court has an independent obligation to ensure that Potter has standing under Article III of the Constitution.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006).

The standing requirements for damages relief are different from those necessary to obtain standing for injunctive or declaratory relief.  *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019).  For injunctive and declaratory relief, the plaintiff must establish that a "real and immediate threat" will occur in the future.  *Id.*  "Past harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive or declaratory relief."  *Id.*; *Hodges*, 2024 WL 3040882, at *12 (quoting *Simpson-Vlach*, 2023 WL 3347497, at *4) ("To obtain standing for declaratory or injunctive relief, Plaintiff must plead either a future injury that is 'certainly impending' or presents a 'substantial risk' of occurrence, or a past injury that presents 'continuing, present adverse effects[.]'")

Potter's alleged harm under the Michigan Constitution is Defendants' failure to provide him "fair and just treatment" during the "investigations" and "hearings" into his termination.  (Am. Compl. ¶ 286.)  Defendants terminated Potter's employment on April 1, 2021.  Three years later, he brought this action.  At that point, Potter was no longer facing a lack of "fair and just treatment" or even termination; the lack of adequate pre- and post-deprivation hearings had already occurred, and he had already been terminated.  And Potter doesn't allege that he is facing an imminent risk of

future harm concerning Defendants' failure to prove fair and just treatment during the investigations and hearings into his termination.  So Potter lacks standing to seek injunctive and declaratory relief for his Michigan Constitution claim since the events that underlie that cause of action occurred wholly in the past.  *City of L.A. v. Lyons*, 461 U.S. 95, 101-03 (1983).

### G. VPA

Potter asserts a VPA claim against Defendants in their individual and official capacities.  "The VPA 'was enacted for the purpose of discharging, in a measure, the debt of gratitude the public owes to veterans who have served in the armed services in time of war, by granting them a preference in original employment and retention thereof in public service.'"  *Sherrod*, 625 N.W.2d at 441 (quoting *Valentine v. Redford Twp. Supervisor*, 123 N.W.2d 227, 230 (Mich. 1963)).  The Act "entitles a veteran to notice and a hearing before his employer may take any action against him with respect to his employment," and "converts at-will public employment positions into ones that are terminable only for just case."  *Id.*  (citing *Jackson*, 506 N.W.2d at 253).  Failing to provide notice and a hearing in violation of the VPA subjects the offender to criminal prosecution.  *Jackson*, 506 N.W.2d at 253.  And if, during the hearing, the mayor finds that the claimant's allegations are true and determines that she should be reinstated, then she would be entitled to back pay.  *Id.*

Defendants argue that Potter's VPA claim impermissibly lumps them into a single indistinguishable entity.  That is true for Defendants Bogren and Ramer.  They cannot be held liable under the VPA because their actions were limited to conducting the post-deprivation hearing.  Moreover, Bogren and Ramer did not have any "power of appointment to a position."[7]  *See* Mich.

---

[7] Other provisions of the VPA confirm that whether an individual has "power of appointment" to be a consideration in determining whether that individual can be held liable under the VPA.  The VPA provides that violations of its provisions by "a person having the power of appointment to a position" may be subject to criminal penalties.  Mich Comp. Laws § 35.403.  These provisions show that the VPA holds not only governmental entities but also specific individuals responsible for employment decisions.  The VPA also allows veterans to seek mandamus against "the person having the power of appointment to the position."  Mich. Comp. Laws § 35.404.  This underscores the VPA's mechanism to hold governmental entities as well as individuals accountable.

Comp. Laws §§ 35.403, 35.404.  Sinadinoski and Mayor Bugera, on the other hand, had control over Potter's employment with the City. Plus, they are alleged to have violated the VPA by either terminating Potter's employment without written notice and a pre-termination hearing or denying Potter reinstatement and back pay, relying on the transcript from an inadequate post-deprivation hearing.  *See also Jackson*, 506 N.W.2d at 252 (reversing a trial court's summary dismissal of plaintiff's VPA action against Detroit Police Chief).  The City's Charter also provides that Sinadinoski held "power to appoint and remove all officers and employees in the administrative service of the city."  Charter, City of Harbor Springs, Section 4.9, https://perma.cc/UKK5-DZUV. The Court will dismiss Potter's VPA claims against Bogren and Ramer but keep his VPA claims against Mayor Bugera and Sinadinoski.

## H. WPA

Potter asserts a claim under the WPA against just the City, Sinadinoski, and Mayor Bugera. They raise two grounds for dismissal: first, Potter's WPA claim is untimely under the WPA's 90-day statute of limitations, and second, even if it is timely, Potter fails to allege a plausible WPA claim. The Court will address each argument.

### 1. Statute of Limitations

The WPA imposes a 90-day limitations period for a civil action arising from a violation of the Act.  Mich. Comp. Laws § 15.363(1).  The 90-day clock begins when the employer takes an adverse employment action against the claimant.  *Millar v. Constr. Code Auth.*, 912 N.W.2d 521, 525-26 (Mich. 2018).  The adverse employment action Potter complains of took place in April 2021. Potter filed this action three years later, considerably later than the 90-day limitations period under Mich. Comp. Laws § 15.363(1).  Thus, unless an exception applies, Potter's WPA claim will be dismissed as untimely.

Potter argues that his initial state action tolled the statute of limitations. Potter is correct. Michigan's tolling rule allows the statute of limitations to be tolled during a prior suit that was not adjudicated on the merits. Here, the preceding case is Potter's state court action he filed in 2021 in Emmet County Circuit Court, No. 2021-107342-CD. *See Darin v. Haven*, 437 N.W.2d 349, 352 (Mich. 1989); *Yeo v. State Farm Fire and Cas. Ins. Co.*, 618 N.W.2d 916, 917 (Mich. 2000). That action, which raises similar claims, has not been adjudicated on the merits. Potter's WPA, therefore, is timely and will not be dismissed at this stage under the 90-day limitations period.

## 2. Merits

To plead a plausible WPA claim, Potter must allege some facts that show (1) he was engaged in a protected activity under Mich. Comp. Laws § 15.362; (2) he was discharged, threatened, or otherwise discriminated against; and (3) there was a causal connection between his protected activity and Defendants' retaliatory action. *Henderson v. City of Flint*, 751 F. App'x 618, 624-25 (6th Cir. 2018) (citations omitted).

### (a) Protected Activity

"The WPA contemplates three types of protected activity: '(1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation.'" *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 629 (6th Cir. 2013) (quoting *Chandler v. Dowell Schlumberger Inc.*, 572 N.W.2d 210, 212 (Mich. 1998)). Michigan's Court of Appeals explained the WPA's protection more simply in *Barrett*:

> The plain language of the statute provides protection for two types of 'whistleblowers': (1) those who report, or are about to report, violations of law, regulation, or rule to a public body, and (2) those who are requested by a public body to participate in an investigation held by that public body or in a court action. *Henry v City of Detroit*, 234 Mich App 405, 409; 594 NW2d 107 (1999). A "type 1" whistleblower is "one who, on his own initiative, takes it upon himself to communicate the employer's wrongful conduct to a public body in an attempt to

bring the, as yet hidden, violation to light to remedy the situation or harm done by the violation." *Id.* at 410. "In other words, . . . type 1 whistleblowers [are] initiators, as opposed to type 2 whistleblowers who participate in a previously initiated investigation or hearing at the behest of a public body." *Id.* "If a plaintiff falls under either category, then that plaintiff is engaged in a 'protected activity' for purposes of presenting a prima facie case." *Id.* A type 2 whistleblower is not required "to report or testify regarding a violation or suspected violation of a law, regulation, or rule" to be entitled to the protections of the WPA. *Shaw v Ecorse*, 283 Mich App 1, 11; 770 NW2d 31 (2009).

*Barrett v. City of Flushing*, No. 365671, 2024 WL 4311373, at *6 (Mich. Ct. App. Sep. 26, 2024).

Here, Potter alleges that he reported "Defendants' violations or suspected violations of state, local and/or federal law, rules and/or regulations in misusing or misappropriating public resources, funds and/or parkland for inappropriate private commercial use by Walstrom" to Michigan's DNR. (Am. Compl. ¶ 12.)  He also alleges that he reported the suspected inappropriate use of "public park property by the Harbor Springs Area Chamber of Commerce," to Michigan's DNR.  (*Id.*) Taken in a light most favorable Potter, these allegations show that Potter reported a violation or suspected violation of law to a public body.  He therefore engaged in protected activity under the WPA.

### (b) Adverse Action

Potter alleges that he was terminated from his employment for reporting this information to Michigan's DNR.  (*Id.* ¶ 172.)  This allegation satisfies the second element.

### (c) Causal Connection

Potter alleges enough facts to prove a plausible connection between his alleged protected activity and termination.  "[A] temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action." *West v. GMC*, 665 N.W.2d 468, 472-73 (2003).  "Something more . . . is required to show causation" under the WPA. *Id.*

In this case, Potter does not rely exclusively on the fact that he was terminated the day after he reported alleged violations and suspected violations of law to the Michigan DNR.  He alleges that "Sinadinoski became very angry and retaliated against Potter by threatening him and changing the terms and conditions of his employment," and Sinadinoski ordered Potter not to "go to the state again without" obtaining permission.  (Am. Compl. ¶ 13.)  These facts, taken as true for the purposes of this motion, provide a plausible connection between Potter's protected activity and adverse action.  Potter pleads a plausible WPA claim.

### I. Michigan Public Policy

Potter claims that Defendants terminated his employment in violation of Michigan public policy.  Michigan recognizes that a plaintiff may hold his ex-employer liable if the employer terminated him: (1) in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) for the failure or refusal to violate the law in the course of employment; or (3) for exercising a right conferred by a well-established legislative enactment.  *McNeil v. Charlevoix Cnty.*, 772 N.W.2d 18, 24 (2009) (citing *Suchodolski v. Mich. Consol. Gas Co.*, 316 N.W.2d 710, 711-12 (Mich. 1982)).

Potter claims that he fits in the first category, relying on his statutory protection under the WPA.  (Am. Compl. ¶ 287.)  He asserts that the WPA is an explicit legislative statement that prohibits the discharge of employees who act in accordance with their respective rights.  (*See id.* ¶¶ 287-88.)  Potter's reliance on the WPA for his public policy claim is misplaced, however.  That is because the Michigan Supreme Court held that the WPA is an exclusive remedy.  *Dudewicz v. Norris-Schmid, Inc.*, 503 N.W.2d 645, 649 (Mich. 1993).  So Potter cannot double-dip by obtaining a remedy under the WPA and Michigan public policy.  *See id.* ("The remedies provided by the WPA, therefore, are exclusive and not cumulative.") (citation omitted).

24

But what about the VPA?  The rule is when a statute already exists that prohibits a particular adverse employment action, the statute provides the exclusive remedy, and claims under Michigan public policy cannot be maintained.  *Kimmelman v. Heather Downs Mgmt. Ltd.*, 753 N.W.2d 265, 268-69 (Mich. 2008).  The VPA does precisely that: it prohibits a public employer from terminating a veteran without just cause.  Mich. Comp. Laws § 35.402.  Only when the veteran engaged in official misconduct, habitual, serious or willful neglect in the performance of duty, extortion, was incompetent, or was convicted for intoxication or a felony, can an employer terminate the veteran.  *Id.*  This right to be terminated without just cause did not exist at common law, either.  Like the WPA, "there was no right to be free from being fired" or to have more job security for being a veteran.  *Dudewicz*, 503 N.W.2d at 649.  The remedies from the VPA, therefore, are exclusive and not cumulative.

The Court will dismiss Potter's public policy claims for failure to state a claim.

## IV. CONCLUSION

The Court will grant in part and deny in part Defendants' motions to dismiss.

Dated: August 19, 2025                                      /s/ Paul L. Maloney
                                                          PAUL L. MALONEY
                                                          UNITED STATES DISTRICT JUDGE